GARRETT MATTINGLY, Plaintiff, v. NEWS SYNDICATE Co., INC., Defendant.

Supreme Court, Special Term, New York County, April 30, 1948.

*Wittenberg, Carrington & Farnsworth* for plaintiff.

*Townley, Updike & Carter* for defendant.

MILLER, J. This is a motion to dismiss various defenses as insufficient, to strike out various paragraphs of the answer as sham, irrelevant, unnecessary, prejudicial, etc., and to have certain portions of the answer made more definite and certain. A motion addressed to the sufficiency of defenses searches the record and presents for determination the sufficiency of the complaint itself. If, upon such a motion, it shall appear that

the complaint fails to state a good cause of action, it may be dismissed even in the absence of a cross motion (see Rules Civ. Prac., rule 109, subd. 6).

The action is one for libel. In view of the conclusion reached by the court it may be assumed, for the purposes of the present motion, that if readers of the publication complained of could reasonably interpret and understand the same as charging the plaintiff with having advocated mass ignorance on a subject of learning, such as United States history, the article would be libelous, particularly since it was written of the plaintiff in connection with his profession as a professor of history.

Even on that assumption the court is of the opinion that the complaint fails to state a good cause of action. It is clear from a reading of the article *as a whole* that no claim or statement is made therein that plaintiff actually stated that he was in favor of mass ignorance on any subject of learning, be it United States history or something else. The language of the article makes it clear that what plaintiff is claimed to have actually said was that he considered that there was excessive teaching of United States history in United States schools; that " if you teach young Americans too much about the history of their own country you are likely to turn them into nationalists and superpatriots and that that is a most deplorable thing "; that United States history should be de-emphasized in our schools and stress on Western hemisphere and European history stepped up. It is likewise clear from a reading of the article that the statements in the headline " Some Professors in Favor of Ignorance " and in the opening portions and concluding paragraph of the article, to the effect that highly respected educators, including plaintiff, have come out for mass ignorance on the subject of learning, viz., United States history, are not what plaintiff actually said, but are merely the conclusions drawn by the defendant from the statements stated in the article to have been actually made by plaintiff to the effect that United States history was overemphasized at the expense of European and Western hemisphere history, and that excessive teaching of United States history was likely to turn young Americans into nationalists and superpatriots.

The references in the article to what plaintiff actually said, even if they be assumed to be false, do not hold up plaintiff to hatred, contempt and ridicule, nor have they a direct tendency to hurt him in his profession as a professor of history. They are in no sense defamatory. Since a reasonable person, reading

the article as a whole, would necessarily understand that the references to the advocacy of mass ignorance were nothing more than the unjustified construction placed by defendant upon what plaintiff was actually claimed to have said, it follows that the language of the article is not libelous although it may well be that plaintiff suffered from its publication (cf. *Kimmerle* v. *New York Evening Journal*, 262 N. Y. 99, 102–103).

The law is well established that in determining whether or not an article is libelous it must be read as a whole, and that words are to be construed together with their context (Newell on Slander and Libel [4th ed.], p. 305; Restatement, Torts, § 563, comment d; Seelman, Law of Libel and Slander in New York, p. 138; *Balabanoff* v. *Hearst Cons. Publications*, 294 N. Y. 351, 355; *First Nat. Bank* v. *Winters*, 225 N. Y. 47; *Kloor* v. *New York Herald Co.*, 200 App. Div. 90, 91). It is true that a defamatory headline referring to a person may be actionable although the body of the article may explain away the defamatory construction to be placed upon the headline (*Shubert* v. *Variety, Inc.*, 128 Misc. 428, affd. 221 App. Div. 856). This is so because many readers may only read the headline and never read the body of the article. This is, however, not such a case since the headline merely reads '' Some Professors in Favor of Ignorance '' and no one reading that headline would understand therefrom that *plaintiff* was in favor of mass ignorance. In order to connect the statement made in the headline with plaintiff one would have to read the body of the article, and upon doing so would, if a reasonable person, understand that, as previously indicated, the plaintiff made no such statement, and that the claim that plaintiff was one of those in favor of mass ignorance was merely the unwarranted interpretation placed by the defendant upon the statements contained in the article as to what plaintiff actually said. In *Jordan* v. *Westchester Newspapers, Inc.* (N. Y. L. J., July 14, 1934, p. 135, col. 1, affd. 242 App. Div. 840) it was held that where the defamatory headline did not refer to the plaintiff and the body of the article indicated that no libel upon plaintiff was intended, the complaint failed to state a good cause of action.

For the reasons indicated, the complaint is dismissed and plaintiff's motion is denied as academic. Plaintiff may, within ten days after service of a copy of this order with notice of entry, serve an amended complaint.